THIS IS EXHIBIT "Q" REFERRED TO IN THE

AFFIDAVIT OF JOHN E. MAGUIRE

SWORN BEFORE ME

ON THIS 5TH DAY OF OCTOBER, 2009

_____
A COMMISSIONER FOR TAKING AFFIDAVITS
Shawn Irving

# CANWEST MEDIA INC.
# AND CERTAIN OF ITS SUBSIDIARIES

## KEY EMPLOYEE RETENTION PLAN
## FOR IMPLEMENTATION

### CREATION OF THE PLAN

Canwest Media Inc. and certain of its subsidiaries and affiliates (other than Canwest Limited Partnership and its subsidiaries (collectively, the "**Company**") intend to commence restructuring proceedings under either one or more of the *Canada Business Corporations Act* ("**CBCA**") or the *Companies' Creditors Arrangement Act* ("**CCAA**") (in either or both case, the "**Proceedings**"). In order to retain key critical employees (including employees of certain of its subsidiaries) providing restructuring assistance to the Company (including in certain instances, to its affiliates and subsidiaries including Canwest Limited Partnership and its subsidiaries not party to the Proceeding) the Company hereby establishes a key employee retention plan ("**Plan**"). In the event of the granting of an initial order under the CCAA (the "**Initial Order**"), CMI will thereafter present the Plan to the Court. The Plan as presented to the Court will be subject to the recommendation of the Monitor and approval by the Court. The Plan has been developed to incentivize employees who are critical to the success of the restructuring to remain with the Company through the completion of the restructuring.

### ELIGIBILITY

Participation in the Plan will be limited to those employees (each a "**Participant**") who are considered by the Company in consultation with the Monitor to be integral to (i) the continued operation of the Company's business (including its affiliates and subsidiaries) during the restructuring and/or (ii) the successful completion of a plan of restructuring, reorganization, compromise or arrangement (or a divestiture of all or substantially all of the Company's assets and operations as one or more going concern entities) as approved by the requisite majorities of the Company's shareholders, classes of creditors and/or the Court, as the case may be.

### RETENTION PAYMENTS

All Participants will be entitled to receive retention payments under the Plan ("**Retention Payments**") on the terms and conditions herein, and as more particularly set out on Schedule "A" hereto. The purpose of the Retention Payments is to provide a cash incentive to Participants to continue their employment with the Company through the full anticipated term of the restructuring.

Retention Payments will be paid to Participants as follows: the first payment shall be made on the last regular payroll period occurring in December 2009 and the second and final payment shall be made on the regular payroll period occurring immediately following the Emergence Date. (in each case, a "Milestone Date")

Retention Payments to each Participant will be calculated as a percentage of that Participant's base compensation.

In the event that a Participant's employment is terminated by the Company without cause or a Participant resigns by reason of constructive dismissal, the Participant will be entitled to receive the full amount of his or her remaining unpaid Retention Payment(s), if any.

In the event that a Participant is terminated for cause by the Company or resigns (other than by reason of constructive dismissal) before any Milestone Date, then the Participant will receive Retention Payment(s) in respect of any Milestone Date(s) occurring before either the (i) date of termination by the Company for cause or (ii) date on which the Participant tenders his or her resignation (other than by reason of constructive dismissal), but will forego any entitlement to receive any further Retention Payments which may be payable on any Milestone Date(s) occurring after such date. Resignation as a director or officer of the Company or any of its Affiliates which is determined by a Participant on a good faith basis, after consultation with his or her legal counsel, is reasonably necessary in the circumstances to protect the Participant from any directors' and officers' liability howsoever arising shall not constitute grounds for the Company to terminate the Participant for cause.

In the event that a Participant dies or is disabled before the occurrence of any Milestone Date, then the Participant (or his or her estate) will receive Retention Payment(s) in respect of any Milestone Date(s) occurring before the date of death or disability, and will be entitled to receive payment of the Retention Payment in respect of the next Milestone Date, if any, prorated to the date of death or disability, but will forego any entitlement to receive any further Retention Payments which may be payable on any Milestone Date(s) occurring after such date.

## STATUTORY REMITTANCES

All Retention Payments will be considered earnings from a Participant's employment and subject to income tax and other statutory deductions required by law or as agreed by the Participant.

## MISCELLANEOUS

Retention Payments will not be considered earnings for the purpose of determining vacation pay or for the purpose of determining any earnings-based, Company-provided employee benefits, including any savings, pension, supplemental deferred compensation or bonus plan.

The terms of the Plan shall be kept strictly confidential by the Participants and the Company, and may only be disclosed by a Participant to members of the Participant's immediate family and his or her professional counsel and financial advisors.

Final 22 September, 2009

Any Monitor appointed by the Court shall have full access to the information set out in this Plan.

In the instance of the Company commencing restructuring proceeding in accordance with the CCAA, it shall be required to file this Plan with the Court for approval (or the Monitor shall attach this Plan to a Monitor's Report) and to make all such disclosure as may be required by Order of the Court and the CCAA; provided, for greater certainty, that the Company and/or the Monitor shall file a version of this Plan that does not include Schedule "A" in the public record and the Company and/or the Monitor shall file this Plan including Schedule "A" in a separate record and request and make best efforts to obtain a sealing order with respect to Schedule "A".

The Plan shall be administered by the board of directors of Canwest Board, unless and to the extent that the Canwest Board determines to delegate the administration of this Plan, in whole or in part, to any committee of the Canwest Board or to any affiliate. The Canwest Board shall have the full power and authority to take all actions, and to make all determinations, required or provided for under this Plan, and all such other actions and determinations not inconsistent with the specific terms and provisions of this Plan deemed by the Canwest Board to be necessary or appropriate to the administration of this Plan. The interpretation and construction by the Canwest Board of any provision of this Plan shall be final, binding and conclusive.

The Canwest Board may at any time and from time to time amend or terminate this Plan with no advance notice, provided that no such amendment or termination may adversely affect any earned and vested rights or interests of any Participant or Designated Participant, without the consent of that Participant or Designated Participant, or otherwise in the case of Proceedings in accordance with the CCAA, on approval of the Court, and for greater certainty approval of the Court in such instance shall be required in the event that the proposed amendment or termination would result in increased cost to the Company's CCAA estate.

In furtherance of the Plan, the Company may make individual arrangements with a Participant, provided that such arrangements are not materially inconsistent with the Plan and in such case, the provisions of the individual arrangements shall govern to the extent of any inconsistency.

This Plan was approved by the Canwest Board on September 22, 2009 and shall continue to be in effect until all amounts payable under the Plan have been paid.

Nothing in this Plan shall confer upon any Participant any right to continue in the employ or service of the Company or any of its Affiliates, or shall interfere with or restrict in any way the rights of the Company, which are hereby expressly reserved, to remove, terminate or discharge, as applicable, any Participant at any time for any reason whatsoever.

This Plan is in addition to any other agreement between a Participant and the Company. Nothing in this Plan shall eliminate, substitute for or replace any obligation the Company has to a Participant in any other employment agreement, incentive compensation plan, option or restricted share unit plan, or the like that may be in effect between the Participant and the Company.

**DEFINITIONS**

**Affiliate** has the meaning ascribed to it in the CBCA.

Final 22 September, 2009

**Board** means the board of directors of Canwest Global Communications Corp.

**Company** means Canwest Media Inc. and certain of its subsidiaries and affiliates.

**Court** means the Ontario Superior Court of Justice Commercial List.

**Emergence Date** means the date the Company emerges from the Proceedings by way of a plan of arrangement, compromise, restructuring or reorganization, which plan may involve a divestiture of all or substantially all of the Company's assets and operations as one or more going concern entities, all as approved by the requisite majorities of the Company's shareholders or classes of creditors, as the case may be, and the Court

**Monitor** means FTI Consulting Canada ULC.

## SCHEDULE "A"

CONFIDENTIAL



